# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

BRADLEY M. HOUSTON,      )
                                   )
           Plaintiff,       )
                                   )
v.                       )          CV621-050
                                   )
WARDEN BRYAN ADAMS,   )
WARDEN COX, SEARGENT    )
WRIGHT, C.E.R.T. OFFICER  )
WILSON, K. JACKSON,      )
MS. MARTIN, and MS. WESSON, )
                                   )
          Defendants.    )

## ORDER AND REPORT AND RECOMMENDATION

The Court previously recommended that *pro se* prisoner Bradley M.
Houston's Amended Complaint be dismissed. Doc. 20. Houston did not
object to that recommendation, but he did file a Second Amended
Complaint as directed. *See id.* at 9; *see also* doc. 22. Since the Second
Amended Complaint supersedes the Amended Complaint, *see, e.g.,*
*Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674
F.2d 1365, 1370 n. 6 (11th Cir. 1982), the prior recommendation is
**VACATED** as moot. Doc. 20. The Court, therefore, proceeds to screen
Houston's Second Amended Complaint. *See* 28 U.S.C. § 1915A.

1

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Houston is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

First, the Court notes that Houston's Second Amended Complaint identifies seven defendants, "K. Jackson, Sergeant Wright, C.E.R.T. Officer Wilson, Ms. Martin, Warden Brian Adams, Warden Cox, [and] Ms. Wesson." *See* doc. 22 at 1, 2-3. His prior pleadings identified numerous other defendants, including Smith State Prison, "Capt. Jackson, Unit Manager Jackson, Warden Care and Treatment, Ms. Brown, Victoria King[,] Chief of Security / Unit Manager Hardimyer[,] Unit Manager, Ms. Martin," doc. 1 at 3, and the Georgia Department of Corrections and Warden Lawrence Whittington, *see* doc. 19 at 2-3. Since

the Second Amended Complaint supersedes all prior pleadings, the defendants not named in the Second Amended Complaint should be **DISMISSED**. *See, e.g., Riley v. Georgia Dept. of Corrs.*, 2012 WL 2872636, at *2 (S.D. Ga. Apr. 17, 2012).

The facts alleged in Houston's Second Amended Complaint are not entirely clear. Houston includes some factual allegations in support of this Court's jurisdiction. *See* doc. 22 at 5. Some of those allegations plausibly support claims asserted later. He also includes a separate section of factual allegations associated with specific claims. *See id.* at 7. There is some apparent reliance on the "jurisdictional" allegations in the assertion of the specific claims, but there are also distinct facts alleged. Given Houston's somewhat scatter-shot presentation, therefore, the Court has attempted to discern the claims he asserts and organize the factual allegations accordingly.

Before considering Houston's claims, the Court must address his requested relief. Houston requests monetary relief, of various descriptions, totaling approximately $4,000,000.00. *See* doc. 22 at 8. He also requests various injunctive relief. *Id.* Finally, he requests immediate release and expungement of his criminal history. *Id.* The last

two requests, release and expungement, are clearly improper. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Moreover, "there is no statutory authority granting [a district court] the general power to expunge the judicial record of a criminal case on purely equitable grounds. [Cit.] …[T]he Eleventh Circuit has held that expungement is not within [a district court's] ancillary jurisdiction . . . ." *Lewis v. Alabama*, 2019 WL 4580431, at *3 (M.D. Ala. Sept. 3, 2019). Houston's requests for release and expungement should, therefore, be **DISMISSED**.

## I.   **Excessive Force Claims**[1]

Houston alleges that several defendants subjected him to excessive force. It is well-settled that "the unnecessary and wanton infliction of

---

[1] Houston has identified various legal theories in his Second Amended Complaint. *See, e.g.,* doc. 22 at 7. Some are plausible based on the facts alleged, as discussed below. Others are not. *See, e.g., id.* (alleging that confining Houston in a cell without running water constituted "[i]ntentional [i]nfliction of [e]motional [d]istress"). Despite the legal theories identified, the liberal construction afforded to *pro se* pleadings "means that federal courts must sometimes look beyond the labels . . . and focus on the content and substance of the allegations." *Royal v. CEC Ent., Inc.*, 2019

4

pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks, alteration, and citation omitted); *see also Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019). "In considering an Eighth Amendment excessive force claim, [the court] must consider both a subjective and an objective component: (1) whether the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted).

Houston alleges that on November 17, 2021, Defendant Jackson shot him with a tazer "for no reason," apparently based on Jackson's mistaken belief that Houston was "throwing waste out of [his cell] flap." Doc. 22 at 5. He was apparently taken for treatment after he was tazed. *Id.* After his treatment, he alleges that he was subjected to a strip search and, while confined naked in a cell, Defendant Wilson sprayed him with pepper spray. *Id.* Those allegations are sufficient to state excessive-force

---

WL 2252151, at *2 (S.D. Ga. May 24, 2019) (internal quotation marks and citations omitted)).

claims against defendants Jackson and Wilson.  Service of the claim on these two defendants is discussed below.

Houston also alleges that Defendant Wright tazed him.  His allegations of that incident are schematic, at best.  He alleges that Wright tazed him at "the same time [his] cellmate tried to stab[ him]."  Doc. 22 at 5.  He subsequently alleges that Wright "committed negligence" by tazing him.  *Id.* at 8.  The Court is not convinced that Houston's allegations are sufficiently clear to state a claim.  *Cf. Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citations omitted)).  To the extent that they are discernable, the facts alleged suggest that Houston has no claim against Wright for excessive force.  Allegations that an officer's force is misdirected fail to state the requisite intent to support an excessive force claim.  *See, e.g., Barcelona v. Rodriguez*, 847 F. App'x 739, 741 (11th Cir. 2021) (citing *Lumley v. City of Dade City*, 327 F.3d 1186, 1196 (11th Cir. 2003) ("That some of the [pepper] spray aimed at [another inmate] hit the wall near Plaintiff's bed and injured Plaintiff is insufficient to establish that [the defendant] had

the requisite intent to cause harm to Plaintiff."). Houston's excessive force claim against Wright should, therefore, be **DISMISSED**.

## II.    Failure to Protect claims

Many of Houston's allegations implicate failure-to-protect claims. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Merely negligent failure to protect an inmate from attack does not justify liability under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). The threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown*, 894 F.2d at 1537 (internal quotation marks and citation omitted).

7

Houston alleges that Defendant Wesson failed to protect him when he informed her that an unnamed inmate was "hanging around [Houston's] cell sexually harassing [Houston] . . . ." Doc. 22 at 5. Despite that report, Wesson did not act and "allowed that inmate to come in and stab[ ] [Houston] . . . ." *Id.* Houston's vague allegation concerning the unidentified inmate's "sexual harassment," is not sufficient to allege a known risk. *See, e.g., Williams v. Reeves*, 2022 WL 3130251, at *2 (S.D. Ga. July 5, 2022) (rejecting a failure-to-protect claim where "[p]laintiff has not provided any details about the [alleged sexual] harassment or any specific information provided to any Defendant . . ."), *adopted* 2022 WL 3107926 (S.D. Ga. Aug. 4, 2022). Houston's failure-to-protect claim against Wesson should, therefore, be **DISMISSED**.

Houston also alleges a failure-to-protect claim against defendants Adams, Cox, and Jackson, which asserts that "all defendants knew [he] was temporarily on Admin[.] Seg[.] for being a sexual victim and they intentionally put a sex offender that just came off a tier 2 program for sexually assaulting a prison official in [his] cell . . . ." Doc. 22 at 5; *see also id.* at 7. The inmate in question then sexually assaulted Houston. *Id.* at 7. The general dangerousness of other inmates is not sufficient to

support a failure-to-protect claim.  *See, e.g., Goodson v. Benton*, 2020 WL 975089, at *2 (S.D. Ga. Jan. 16, 2020) (citations omitted) ("Prisons are dangerous places because they are filled with people society has already deemed too dangers to live amongst law abiding persons.  Prisoners will always be at some risk of harm simply by being surrounded by these people.  [Cit.]  In order to trigger a failure-to-protect claim, a plaintiff must allege that the threat rose above the background danger.").  Even supposing that Houston had alleged a sufficiently definite risk, he has not alleged any defendant's subjective knowledge in a more-than-conclusory fashion.  His failure-to-protect claim against defendants Adams, Cox, and Jackson should, therefore, be **DISMISSED**.

## III.   Conditions-of-Confinement

Houston alleges that, on several occasions, he was confined to a cell without running water.  *See* doc. 22 at 5 (alleging that, after he was pepper-sprayed, his "water was off for the remaining [sic] of the night."), *id.* (alleging that Wesson "allowed [another inmate] to convince her to turn [his] water off . . ."), 7 (alleging that defendants Jackson, Wesson, Wilson, Cox, and Adams "cut Plaintiff water off").  His allegations

concerning his immediate access to water in his cell implicate a conditions-of-confinement claim.

The Eighth Amendment's prohibition on "cruel and unusual punishment" generally applies in circumstances where individuals who have been convicted of a crime are subject to unconstitutional conditions of confinement. *See, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976). Claims that prison conditions violate the Eighth Amendment, whether immediately or by creating an unreasonable risk, require the allegation of both an objectively serious condition and a defendant's deliberate indifference to that condition. *See, e.g., Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (claim based on risk of future harm requires objective showing of "substantial risk of serious harm," "the defendants' deliberate indifference to that risk," and causation); *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (discussing "two-prong showing" required for Eighth Amendment claims challenging conditions of confinement); *Ellis v. Pierce Cnty, Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) ("A pretrial detainee in a conditions-of-confinement suit must satisfy both an objective and a subjective inquiry into the conduct of the defendant prison officials."). "[O]nly those deprivations denying the

minimal civilized measure of life's necessities, [cit.] are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citations omitted).

To be sure, denial of access to water may violate the Eighth Amendment. *See, e.g., Spires v. Paul*, 2018 WL 3544807, at *5 (S.D. Ga. May 25, 2018). However, intermittent lack of access to running water is not necessarily a violation. *See, e.g., Gross v. White*, 2008 WL 2795805, at *9 (M.D. Fla. July 18, 2008) (finding no constitutional violation stated where plaintiff "alleges that the water was turned off in his cell for thirty-six (36) hours, [but] does not allege that he was denied food or liquids."), *aff'd* 340 F. App'x 527, 536 (11th Cir. 2009). Even assuming that Houston could bolster his allegations concerning his access to running water in his cell, he has not alleged sufficient facts to establish any defendant's subjective indifference to a more serious or long-term deprivation. His conditions-of-confinement claim should, therefore, be **DISMISSED**.

## IV.   Indifference to Medical Needs claims

Houston objects several times that he was not provided with medical care. He first alleges that defendants Wesson, Cox, and Adams

did not provide medical care when he was stabbed in his hand.  *See* doc. 22 at 5.  He also alleges that defendant Martin and a doctor, not listed as a defendant, "denied medical" despite his "sick call request." *Id*.  He later alleges, generally, that Wesson, Jackson, Adams, Cox, Wilson, Martin, and the doctor "violated [his] right to medical . . . because when plaintiff was physically injured . . . [they] failed intentionally to get [him] medical help even when [he] submitted a sick call request." *Id*. at 8.

To offend the Eighth Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . " *Estelle*, 429 U.S. at 104.  This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011).  However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Houston's allegations are not sufficient to allege either prong of a deliberate indifference claim against any defendant.  First, his general allegations concerning an "injury" are not sufficient to allege that he was suffering from a "serious medical need."  Doc. 22 at 5.  His general allegations that another inmate "yelled to" Wesson concerning his unspecified injury and that he "showed and told" Cox and Adams something are not sufficient to allege their subjective knowledge concerning his condition, whatever it might have been.  *See id*.  His submission of a "sick call" does not allege either Martin's or the doctor's subjective knowledge.  *See id*.  Finally, there is simply no allegation at all that suggests Jackson or Wilson's knowledge of a medical need.[2]  Houston's deliberate indifference to medical needs claims should, therefore, be **DISMISSED**.

---

[2]  Although it is not clear, Houston may intend to allege that Jackson and Wilson's knowledge of a serious medical need arose from their involvement in pepper-spraying him and leaving him in a cell.  *See* doc. 22 at 5.  Courts have recognized that the effects of prolonged exposure to pepper spray can result in a serious medical need, but the immediate effects of pepper spray are not.  *See, e.g., Simmons v. Williams*, 2017 WL 3427988, at *25-27 (S.D. Ga. Aug. 9, 2017) (citing, *inter alia, McNeeley v. Wilson*, 649 F. App'x 717, 722 (11th Cir. 2016)).  In the absence of clearer allegations concerning the duration of Houston's exposure to pepper spray and the effects he suffered, the Court cannot conclude that Jackson and Wilson's failure to provide medical care violated the Eighth Amendment.

## V.   Retaliation

Houston alleges that he was retaliated against for making complaints.  His allegations are, however, extremely vague.  He alleges that he was "denied medical care due to staff retaliation."  Doc. 22 at 5. His explicit retaliation claim states that he filed suit and told several defendants that he "and other inmates were not being treated right . . . ." *Id.* at 7.  He alleges that "[a]fter that moment unfortunate events started to happen to [him]," including the events described above.  *Id.*

The First Amendment forbids prison officials from retaliating against prisoners for exercising their First Amendment rights.  *Thomas v. Evans*, 880 F.2d 1235, 1241 (11th Cir. 1989).  "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."  *Id.* at 1242.  Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising [his First Amendment rights]."  *Id.*  "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal connection between the

14

retaliatory action . . . and the protected speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotations and alterations omitted); *see also Smith v. Fla. Dep't of Corr.,* 713 F.3d 1059, 1063 (11th Cir. 2013).

It appears that Houston alleges that his filing of the instant suit precipitated the retaliation. *See* doc. 22 at 7 (alleging events postdating the filing of the original Complaint). "The First Amendment protects inmates from retaliation by prison officials for filing lawsuits or administrative grievances." *Redd v. Conway*, 160 F. App'x 858, 862 (11th Cir. 2005). The alleged conduct, regardless of whether it alleges independent constitutional violations, is also sufficient to allege adverse action. However, Houston alleges no fact which suggests a causal connection between his protected speech and any of the conduct alleged. "[A] plaintiff is required to do more than make 'general attacks' on a defendant's motivations and must articulate 'affirmative evidence' of retaliation to prove the requisite motive," *Jackson v. Assistant Warden*, 2018 WL 7858414, at * 2 (11th Cir. Dec. 6, 2018) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). Houston's retaliation claims should, therefore, be **DISMISSED**.

## VI.   Due Process claim

Houston claims that his detention "in segregation for almost a year without any process of a hearing," violates the Fourteenth Amendment. *See* doc. 22 at 7.   A liberty interest in avoiding segregated confinement may exist where the conditions of the segregation are an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life . . . ." *Quintanilla v. Bryson*, 730 F. App'x 738, 743 (11th Cir. 2018) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Turner v. Warden, GDCP*, 650 F. App'x 695, 700 (11th Cir. 2016); *Wallace v. Hamrick*, 229 F. App'x 827, 830 (11th Cir. 2007) (noting the "touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is . . . the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " (quoting *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005))). "Confinement to administrative segregation, under conditions substantially similar to those experienced by the general population of the prison," however, "does not implicate liberty interests. . . ." *Al-Amin v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006).   Houston's Second Amended Complaint does not include any allegations concerning the

conditions of his confinement "in segregation." *See* doc. 22 at 7. His due process claim should, therefore, be **DISMISSED**.

In summary, Houston's claims that Jackson and Wilson subjected him to excessive force are approved for service on those defendants. All defendants identified in prior pleadings, but not named in the Second Amended Complaint, should be **DISMISSED**. To the extent that the Second Amended Complaint seeks his immediate release and expungement of his criminal history, it should be **DISMISSED, in part**. To the extent that the Second Amended Complaint claims: (1) that Defendant Wright subjected him to excessive force; (2) that any defendant failed to protect Houston against assault by other inmates; (3) that Houston was subjected to unconstitutional conditions of confinement; (4) that any defendant was deliberately indifferent to Houston's serious medical needs; (5) that any defendant retaliated against his exercise of his First Amendment rights; or (6) that any defendant violated Houston's due process rights, it should be **DISMISSED, in part**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B)

and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Since the Court approves for service Houston's excessive force claims against defendants Jackson and Wilson, a copy of Plaintiff's Second Amended Complaint, doc. 22, and a copy of this Order and Report and Recommendation shall be served upon Defendants Jackson and Wilson by the United States Marshal without prepayment of cost.  The

Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff. The Court also provides the following instructions to the parties that will apply to the remainder of this action.

### INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.5. A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d). Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination. Fed. R. Civ. P. 30(a)(2). Defendants are further advised

the Court's standard 140-day discovery period will commence upon the filing of the last answer.  Local R. 26.1.  Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any.  Defendants shall present such questions to the witness in order and word-for-word during the deposition.  Fed. R. Civ. P. 30(c).  Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## INSTRUCTIONS TO PLAINTIFF

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.  Local R. 11.1.  Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery.  See generally Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Id.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then

only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per

22

page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for failure to prosecute. Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant. Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to

attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. Failure to respond shall indicate that there is no opposition to a motion. Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. If a Defendant files a motion

for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be met by reliance on the conclusory allegations contained within the complaint. If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts. If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 12th day of December, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA